**EXHIBIT 2**

1 of 3 DOCUMENTS

TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE AND PENSION FUNDS, Plaintiffs, v. HOPE CARTAGE, INC., an Illinois Corporation, Defendant.

No. 02 C 8775

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2005 U.S. Dist. LEXIS 27866; 178 L.R.R.M. 2513; 151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

November 15, 2005, Decided
November 15, 2005, Filed

**COUNSEL:** [*1] For Trustees of the Suburban Teamsters of Northern Illinois Welfare and Pension Funds, Plaintiff: John Joseph Toomey, Steven F. McDowell, Arnold & Kadjan, Chicago, IL.

For Hope Cartage, Inc. an Illinois corporation, Defendant: Joseph Patrick Berglund, Berglund & Niew PC, Oakbrook, IL.

For Hope Cartage, Inc., ThirdParty Plaintiff: Joseph Patrick Berglund, Berglund & Niew PC, Oakbrook, IL.

For Union Local 179 affiliated with the International Brotherhood of Teamsters, General Chauffeurs, Sales Drivers, and Helpers, Robert White an individual, Third Party Defendants: Joseph Patrick Berglund, Berglund & Niew PC, Oakbrook, IL; Roger N. Gold, Roger N. Gold, Ltd., Chicago, IL.

**JUDGES:** Judge James B. Zagel.

**OPINION BY:** James B. Zagel

**OPINION**

**MEMORANDUM OPINION AND ORDER**

In March 1989, John Sinese, owner of Hope Cartage, Inc. ("Hope"), signed a collective bargaining agreement (CBA) on behalf of Hope with Teamsters Local 179 ("Union"). Sinese thereafter extended the CBA four times, through April 2005. Plaintiffs are the Trustees of the Suburban Teamsters of Northern Illinois Welfare and Pension Funds (the "Funds"). Plaintiffs first learned of the Hope-Union CBA in October 2001, shortly [*2] after Hope renewed the CBA and a Union employee sent the Funds a "new employer" package.

In November 2001, Plaintiffs contacted Hope and demanded reports and contributions for the months of May 2000 through September 2001. The following year, Plaintiffs' payroll auditor declared that Hope owed Plaintiffs' Welfare Fund $ 23,412.02 and Plaintiffs' Pension Fund $ 15,904.45 on behalf of Hope's owner and employee Sinese. When Hope failed to pay, Plaintiffs filed suit seeking an audit and contributions dating back to 1992. That audit revealed allegedly delinquent payments for Sinese and owner-drivers to whom Hope subcontracted work. With interest and other penalties permitted under 29 U.S.C. § 1132(g)(2), the alleged delinquency presently totals $ 226,092.16.

Both parties filed cross motions for summary judgment, seeking resolution of the case without resort to trial. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. A [*3] genuine issue of material fact exists when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Plaintiffs argue that they are entitled to the full amount of the delinquency for the following reasons: Sinese signed a CBA, which requires contributions to the

Case 1:08-cv-01228    Document 27-3    Filed 08/27/2008    Page 3 of 8

Page 3

2005 U.S. Dist. LEXIS 27866, *; 178 L.R.R.M. 2513;
151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

2  Cf. Moriarty v. Korkis, No. 02 C 2861, 2004 U.S. Dist. LEXIS 19671, at *4 (N.D. Ill. Sept. 30, 2004) (noting that after the Yates ruling, the defendant withdrew his argument that president and sole shareholder of the corporation could not participate in an ERISA plan).

### Sinese's Alleged Waiver of Participation in the Funds

Sinese entered into the CBA in order to secure contracts available only to union employers. It is also uncontested that Sinese was Hope's sole driver during the period in dispute (setting aside, for the moment, the issue of the subcontractors Hope hired for its overflow [*9] work). Sinese alleges that when he signed the CBA he simultaneously entered into an oral agreement with Union representative Robert White. According to Sinese, the oral agreement permitted Hope to avoid any contribution to the Funds. Hope seeks summary judgment of Plaintiffs' claim for contributions on the grounds that Sinese knowingly and voluntarily waived all benefits Plaintiffs may have provided to him under the trust agreements. Hope argues that it cannot be liable for contributions if Sinese waived Hope's obligation to pay and his own right to receive any benefits in return.

Relying on cases establishing that employees are entitled to waive their participation in ERISA plans, Hope argues that Sinese was entitled to waive his participation in the Funds so long as the waiver was knowing and voluntary. See, e.g., Sharkey v. Ultramar Energy, 70 F.3d 226, 231 (2d Cir. 1995) (observing that individuals may waive their right to participate in pension benefit plans when, "in the totality of the circumstances, the individual's waiver of his right can be characterized as 'knowing and voluntary'") (quoting Laniok v. Advisory Committee of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1368 (2d Cir. 1991)). [*10]

Plaintiffs argue that whether or not Sinese and the Union verbally agreed that Hope would not be required to make contributions to the Funds (a fact the Funds and Robert White vehemently deny), they are not bound by any such agreement. Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1149 n.1 (7th Cir. 1989) (en banc) (citations omitted) established that bargaining history is "irrelevant" and the discovery of such information is unavailable when fund trustees seek to enforce the terms of a collective bargaining agreement. Funds are entitled to enforce collective bargaining agreements according to their terms and without regard to the understandings or defenses applicable to the original parties to the agreement. Id. at 1149. These defenses include fraud and oral side agreements. Id. at 1154. See also Central States, Southeast & Southwest Areas Pension Fund v. Joe McClelland, Inc., 23 F.3d 1256, 1257-58 (7th Cir. 1994) ("no matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation [*11] to the pension fund, which is not party to local understandings and limitations . . . as a matter of law the [local] understanding is irrelevant").

The Gerber Court, however, based its decision on the premise that the plaintiff funds relied on the terms of the written agreement. Id. at 1151 ("plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits"). In this case, Plaintiffs did not have notice of the written agreement between Hope and the Union until 11 years after its formation, and Hope's employee[s] did not figure into Plaintiffs actuarial computations prior to October 2001. Hope claims that to award any contributions to Plaintiffs for the period prior to October 2001 would provide Plaintiffs with a pure windfall, free of any corresponding obligation to provide benefits to Sinese. (Def. Mem. in Opposition, at 7-8.)

Nonetheless, there is a persuasive argument for holding Hope (and the Union) to the terms of the written contract. "Gerber does not indicate that the pension fund must be 'hurt' to recoup contributions under its collective bargaining agreement. Rather, Gerber emphasizes [*12] the national policy of requiring employers to fulfill their pension agreements, which in turn, minimizes administrative problems, litigation costs, and adverse selection." Central States, Southeast and Southwest Areas Pension Fund v. Tank Transport, Inc., 1993 U.S. Dist. LEXIS 13044, No. 90 C 5524, 1993 WL 369331, at *8 (N.D. Ill. Sept. 17, 1993) (citation omitted). The facts surrounding Sinese's alleged oral agreement to avoid contributions to the funds are disputed. [3] What is not disputed is the fact that Sinese and the Union signed a CBA requiring Hope to contribute to the Health and Welfare Funds on behalf of each regular employee covered by the agreement and to contribute to the Pension fund for each regular employee who worked two calendar days in any calendar week. Sinese admits that he was never told, by Plaintiffs, that contributions were not required. That the Union failed to forward a copy of the CBA to Plaintiffs prior to October 2001 does not alter the overriding principle that employers have an obligation to fulfill the promises they make in collective bargaining agreements. While Hope may assert other defenses to Plaintiffs' effort to collect contributions for the entire statutory [*13] period, Sinese's purported oral agreement waiving his obligation to make contributions carries no weight. [4] To hold otherwise would ignore the plain language of the CBA.

Case 1:08-cv-01228   Document 27-3   Filed 08/27/2008   Page 4 of 8

Page 4
2005 U.S. Dist. LEXIS 27866, *; 178 L.R.R.M. 2513;
151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

3   Robert White denies agreeing to any scheme in which Hope would not be required to make all of the contributions required by the CBA.

4   I also find unpersuasive Hope's defense to collection of contributions based on Sinese's 2005 effort to waive unilaterally his entitlement to any benefits from Plaintiffs. In support of this defense, Hope again relies on cases establishing the right of individuals to waive their entitlement to participate in single-employer pension plans. *See, e.g., Laniok v. Advisory Committee of Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360 (2d Cir. 1991). Those cases were brought under 29 U.S.C. § 1132(a)(1)(B) by plaintiffs asserting claims for benefits; the defendants argued that the claims were barred by bargained-for releases (waivers) made knowingly and voluntarily. *See id.* In the instant case, an employer is attempting to avoid an action filed by the Plans under 29 U.S.C. § 1145 on the basis of the owner-employee's post-facto, unilateral offer to amend the terms of the CBA. The cases cited by Hope do not bear upon the outcome of this dispute. Hope's argument that Sinese was entitled to waive unilaterally any obligation to or entitlement from Plaintiffs (eleven years after signing the CBA) because the trust documents do not explicitly forbid waivers is similarly unavailing.

[*14] ***Plaintiffs' Right to Contributions Falling within the Statute of Limitations Period***

Finally, Hope seeks to avoid contributions for the period preceding October 2001, when Plaintiffs learned of the CBA, on the basis of two clauses within the Welfare and Pension Trust Agreements. One such clause states:

> The Trustees are authorized to extend the coverage of this Restated Agreement and Declaration of Trust to *such other Employers as the Trustees shall agree upon,* provided such Employers are required and agree to conform to the terms and conditions hereof and to make Employer Contributions pursuant to a Collective Bargaining Agreement with a Union.

(Joint Ex. 10, § 3.20) (emphasis added). 5 As Hope construes those provisions, it was not bound to the Trust Agreement until Plaintiffs actively exercised their powers under Section 3.20, *i.e.,* until Plaintiffs "agreed" to extend coverage to Hope. Hope reasons that because Plaintiffs were unaware of the CBA prior to October 2001, they could not have agreed to extend coverage to Hope before that time and are not entitled to benefits for that period.

5   The other provision states, in relevant part, "nothing herein shall require the Trustees to extend the coverage of this Restated Trust Agreement to every Employer which is a party to a Collective Bargaining Agreement with the Union or, having excluded such coverage, to continue to do so." (Joint Ex. 11, Art. III, § 3.18.)

[*15] Plaintiffs' only response to this argument is to rely on the provisions of the CBA.

> The Employer shall contribute into a trust set up by trust agreements now in effect in the aforementioned Local Unions for the payment of Health and Welfare or Pension benefits, as the case may be, as determined by the appropriate Board of Trustees, the amounts shown . . . below per week for an employee covered by this Agreement, in accordance with the requirements set forth in the appropriate Appendix of this Article.

(Joint Ex. 9, Art. 16, § 16.1) Hope admits that the CBA states that the Employer "shall contribute contributions to the Health and Welfare Funds as set forth in Article 16 . . . on behalf of each regular employee covered by the Agreement" and that the CBA requires "each Employer to pay into the Pension Fund the amount for each stated in Article 16 . . . as of the appropriate date stated therein for each regular employee covered by this Agreement who performs work on two calendar days and any calendar week. (Def.'s S.M.F., PP 51, 52.)

Hope's suggestion that it was not obligated to make contributions until Plaintiffs agreed to extend benefits is inconsistent with its [*16] admission that Article 16 of the CBA mandated contributions to the Funds by employers. Moreover, if Hope's obligation was not triggered until Plaintiffs' "agreement," Sinese's purported oral side agreement with the union would have been meaningless. Considering both the CBA and the Trust Agreements in their entirety, I could not be persuaded that Plaintiffs were required to take any affirmative steps before Hope was obligated to make contributions.

For these reasons, I find that Hope was obligated under the plain language of the CBA to make contributions on behalf of employee-owner Sinese for the entire period of the CBA (within the applicable statute of limitations) and that Sinese offers no valid defense for his failure to make contributions. Plaintiffs' motion for

Case 1:08-cv-01228    Document 27-3    Filed 08/27/2008    Page 5 of 8

2005 U.S. Dist. LEXIS 27866, *; 178 L.R.R.M. 2513;
151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

Page 5

summary judgment in the amount of $ 184,169.82 is granted.[6]

[6] Hope did not raise any objections to the calculations used to reach this figure.

### Contributions for Subcontractors

Pursuant to Article 24 of the CBA, Plaintiffs also [*17] seek contributions for several owner-drivers to whom Hope subcontracted work. Alternatively, Plaintiffs argue that Hope breached Article 17 of the CBA by subcontracting work when it employed less than two individuals and claim they are entitled to damages to compensate them for the losses sustained by this breach. Hope contends that the owner-drivers were independent contractors for whom no contributions were required and for whom contributions would be illegal under ERISA and the LMRA.

Section 515 of ERISA "requires employers to comply with the terms of their agreements to make contributions to funds," *Central States, Southeast & Southwest Areas Pension Fund v. Transport, Inc.,* 183 F.3d 623, 627 (7th Cir. 1999) (citation omitted), to the extent that such terms are not inconsistent with the law. *See Central States, Southeast & Southwest Areas Pension Fund v. Hartlage Truck Serv., Inc.,* 991 F.2d 1357, 1360 (7th Cir. 1993). Section 302 of the LMRA prohibits an employer from contributing to a trust fund "on behalf of, or for the benefit of, anyone ineligible to receive benefits from those funds." *Illinois Conference of Teamsters & Employers Welfare Fund v. Mrowicki,* 44 F.3d 451, 460 (7th Cir. 1994) [*18] (citations omitted). Nonetheless, a collective bargaining agreement may require employees to make contributions to funds based on the hours worked by non-employee subcontractors without violating Section 302. *Walsh v. Schlecht,* 429 U.S. 401, 405, 410, 97 S. Ct. 679, 50 L. Ed. 2d 641 (1977). "Although an employer would violate section 302 by permitting subcontractors to participate in the trust fund benefits, the employer would not violate section 302 by making contributions to the trust funds measured by the hours worked by these subcontractors, so long as only employees participated in these benefits." *Chicago Painters & Decorators Pension v. Karr Bros., Inc.,* 755 F.2d 1285, 1289-90 (7th Cir. 1985) (citing *Walsh,* 429 U.S. at 410).

I must first consider whether the CBA required Hope to contribute to the funds on behalf of the owner-drivers to whom it subcontracted work; if I find this to be the case, I must determine if the contributions called for in the CBA were permissible. *Mazzei v. Rock-N-Around Trucking, Inc.,* 246 F.3d 956, 960, 961 (7th Cir. 2001) (citations omitted); *see also Mrowicki,* 44 F.3d at 458, 460. The following provisions [*19] of the CBA are relative to this analysis.

Article 16: Health and Welfare and Pension

16.1. The Employer shall contribute into a trust set up by trust agreements now in effect . . . for the payment of Health and Welfare or Pension benefits . . . the amounts shown in 16.2 below per week for an employee covered by this agreement.

Appendix A: Health and Welfare

A.1. Each Employer shall pay the amount per week stated in Article 16 . . . as of the appropriate date stated therein for each regular employee covered by this Agreement who performs any work in such week into a trust fund . . . for the payment of Health and Welfare benefits.

Appendix B: Pension

B.2-1. Each Employer shall pay into the Pension Fund the amount per week stated in Article 16 . . . as of the appropriate date stated therein for each regular employee covered by this agreement who performs work on any two (2) calendar days in any calendar week.

Article 17: Work Preservation and Protection of Standards

17.1. For the purpose of preserving work and job opportunities for employees covered by this Agreement . . . the Employer agrees that no operation, work or services of the [*20] kind, nature or type covered by, or presently performed, by the Employer will be subcontracted, transferred, diverted or assigned in full or in part . . . by the Employer . . . unless specifically provided or permitted in this agreement.

17.2. The term "overflow work" as provided herein, is defined as any work in excess of work performed by the average number of employees covered by this Agreement . . . but, in no event, less than two employees. The Employer may subcontract work when all of its regular employees are fully employed. Overflow work may be performed by persons other than the Employer's employees, provided that such subcontracting is not used as a subterfuge to evade the provisions of this

Case 1:08-cv-01228   Document 27-3   Filed 08/27/2008   Page 6 of 8

Page 6

2005 U.S. Dist. LEXIS 27866, *; 178 L.R.R.M. 2513;
151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

agreement, and is done in accordance with this Article. Owner-operators or other persons performing overflow work shall be paid no less than an amount equal to the wages and fringe benefits being paid to employees covered by this Agreement exclusive of truck rental and lease cost.

Article 24: Owner-Drivers

24.1. Owner-drivers operating their own vehicles and who are not certified carriers with proper Illinois Commerce Commission authority are covered within the terms and [*21] conditions of this Agreement, including Union security, hours, wages, overtime, Health and Welfare and Pension and working conditions .
. .

24.1-3. The Employer reserves the right to control the manner, means and details of and by which such Owner-Driver performs his services, as well as the ends to be accomplished.

24.1-4. Such Owner-Driver shall receive the full wages, supplemental allowances, and all working conditions provided in this Agreement and shall receive as a minimum salary after payment of all direct and indirect operating expenses (including contributions to the Health and Welfare and Pension Fund) the sum equal to the amount he would have received for the time he would have worked as an hourly rated driver.

24.1-6. In no event shall such Owner-Driver's wages be paid on a percentage basis.

(Joint Ex. 9.) Under the contract's clear language, Hope was obligated to treat owner-drivers doing work covered by the CBA as if they were employees and were required to make contributions to the Health and Welfare and Pension funds unless the owner-drivers fell under Article 17's subcontracting provision. [7] (Joint. Ex. 9, Art. 24.) *Cf. Mrowicki*, 44 F.3d at 458 [*22] (finding that the "plain meaning" of similar contractual language required that "all individuals who owned and operated single trucks and who were engaged to perform services covered by the CBAs were, unless they were 'used as subcontractors' . . . to be carried on their employers' payrolls and be regarded as 'employees' covered by all the terms and conditions of the CBAs"). I turn next to the legality of these provisions.

7   Throughout its briefs Hope refers to its owner-drivers as subcontractors, but its argument with respect to the legality of the contributions required by the CBA turns on Articles 16 and 24, so I assume for this argument that Hope considers its owner-drivers independent contractors falling within Article 24. I address later Hope's alternative argument that the owner-drivers were true subcontractors within the meaning of Article 17.

In *Mazzei*, the Seventh Circuit considered a contract similar to the one at issue in this case, with clauses almost identical to Article 16 (Contributions to [*23] Health and Welfare and Pension Funds) and Article 24 (Owner-drivers). 246 F.3d at 960. Reviewing the contract, the Court held that "there can be no mistaking the fact that the CBA attempts to impose an obligation on [the defendant employer] to contribute to the Funds for each of its owner-drivers." *Id.* at 960-61. Like the CBA in this case, the CBA in *Mazzei* required contributions to the Health and Welfare Fund for each employee covered by the agreement, though the exact language of the CBA differed. *See id.* at 962 (observing that the CBA required contributions "for each employee . . . who performs work on any two calendar days in any calendar week, *regardless of the number of hours worked*") (emphasis in original). [8] As the *Mazzei* Court noted, "the measure of these contributions has no relation to the number of hours these individuals actually work." *Id.*

8   A similar provision governed contributions to the pension fund. *Id.*

*Mazzei* distinguished [*24] this requirement from the contributions upheld in *Walsh*, concluding that *Walsh* only permitted contributions (regardless of the employment status of the employer's workers) when the amounts of the contributions were measured by the number of hours worked. *Id.* at 962. Since the agreement at issue in *Mazzei* did not base contributions on the number of hours worked, the Court concluded that "the employment status of [the employer's] owner-drivers will determine the legality of the contributions under the LMRA." *Id.* In other words, *Walsh* was inapplicable and common law principles governing the status of independent contractors determine whether the required contributions were permissible. *Id.* at 962-63. As the contract language in this case is nearly identical to the language at issue in *Mazzei*, I must apply the same analysis. Therefore, I turn to common law agency principles to determine the employment status of Hope's owner-drivers and whether the CBA mandates impermissible contributions. [9]

9   The CBA in this case does not contain the words "regardless of the number of hours

Case 1:08-cv-01228    Document 27-3    Filed 08/27/2008    Page 7 of 8

Page 7

2005 U.S. Dist. LEXIS 27866, *; 178 L.R.R.M. 2513;
151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

worked." *Cf. Mazzei* at 962. Nevertheless, those words are not necessary for me to reach the same outcome. The plain language of Hope's CBA establishes that the contributions outlined in Section 16.2-1 (Health and Welfare) and 16.2-2 (Pension) do not depend on the number of hours worked. Rather, the CBA requires contributions at fixed, weekly amounts so long as any regular employee performs "any work in such week" (Health and Welfare) or performs "work on any two (2) calendar days in any calendar week." (Joint Ex. 9, Art. 16, App. A, B.)

[*25] The Supreme Court has adopted a "common-law test for determining who qualifies as an 'employee' under ERISA." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992). Whether Hope's owner-drivers are employees or independent contractors turns on a multi-part test in which "the employer's right to control is the most important [factor]." *EEOC v. North Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998) (internal quotation and citation omitted). The other factors include:

> the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, [] responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, [] method and form of payment and benefits, and [] length of job commitment and/or expectations.

*Mazzei*, 246 F.3d at 963 (quoting *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991)).

Hope's owner-drivers owned their own trucks, worked for other employers, were responsible for the costs of storage, maintenance, gas, and insurance on the trucks, and could [*26] refuse work assignments from Hope without penalty. Under the Seventh Circuit's test, Hope's owner-drivers are quite clearly independent contractors. *See Mazzei*, 246 F.3d at 964 (employer's similar degree of control over owner-drivers amounted to little more than a "basic level of supervision," owner-driver's use of own trucks and ability to refuse work further demonstrated minimal control by employer, and owner-driver's payment of storage, maintenance, gas and insurance are "strong indication" that drivers were independent contractors) (internal quotations and citation omitted). Employers cannot be required to contribute to welfare and pension funds for owner-drivers who are independent contractors when the contributions are not measured by the hours worked by the independent contractors. *Mazzei*, 246 F.3d at 965. Therefore, I must deny Plaintiffs' motion for summary judgment, as the contributions called for in the CBA violate the LMRA. *Cf. Mrowicki*, 44 F.3d at 461 (contributions based on hours worked by independent contractors did not violate LMRA and could be enforced under ERISA).

There remains, however, the issue of whether Plaintiffs [*27] are entitled to damages based on Hope's breach of the CBA. Plaintiffs argue that Hope breached the CBA when it hired sub-contractors in violation of Article 17.2, which required Hope to employ at least two employees before subcontracting work, and when it paid those subcontractors on a percentage basis, which is prohibited under Article 24.1-6. Article 17, entitled "Work Preservation and Protection of Standards," is a subcontracting clause defining the conditions in which a signator employer can subcontract bargaining unit work. It protects the bargaining unit from an employer's efforts to receive indirectly cheaper labor than called for under the terms of the contract. Faced with overflow work, Hope subcontracted with owner-drivers rather than hire additional employees, whom Hope would have been required to pay on an hourly, rather than a per-ton, basis and for whom Hope would have been required to extend other union benefits, including contributions to the Funds. Plaintiffs are entitled to damages for Hope's breach of contract. The appropriate measure of those damages are the contributions Hope would have made had it hired additional employees rather than hiring subcontractors in [*28] violation of the CBA.

Hope relies on *Woldman v. County Line Cartage Inc.*, 2003 U.S. Dist. LEXIS 24708, No. 01 C 9414, 2003 WL 22995161 (N.D. Ill. Dec. 16, 2003) for the proposition that it should not be held liable for contributions despite any breach. In *Woldman*, Judge Hibbler denied the plaintiff funds' demand for contributions despite the employer's breach of contract by hiring subcontractors. Had the employer properly hired subcontractors, the plaintiff funds still would not have received any contributions because the CBA did not require contributions for properly hired and compensated subcontractors. In this case, the CBA prohibited Hope, a corporation with fewer than two employees, from hiring subcontractors. (Joint Ex. 11, Art. 17.) By improperly subcontracting overflow work to owner-drivers, Hope breached the contract in a manner that imposed costs (in the form of lost contributions for employees Hope was required to hire before subcontracting work) on Plaintiffs and they are entitled to damages to compensate them for those losses. *See Karr Bros.*, 755 F.2d at 1290 ("the district court correctly required defendant to pay plaintiffs the amount that defendant would have [*29] been required to contribute to the trust funds if it had complied with the col-

Case 1:08-cv-01228    Document 27-3    Filed 08/27/2008    Page 8 of 8

Page 8
2005 U.S. Dist. LEXIS 27866, *; 178 L.R.R.M. 2513;
151 Lab. Cas. (CCH) P10,580; 36 Employee Benefits Cas. (BNA) 1747

lective bargaining agreements and hired employees to do bargaining unit work").

For this reason, I grant Plaintiffs' motion for summary judgment in the amount of $ 22,619.00 based upon Hope's impermissible subcontracting of work to owner-drivers Maves Trucking, K&N Trucking, Larry Fultz, David Steffes, Mike Nelson and Terry Jacobsen.

*Conclusion*

Plaintiffs are entitled to summary judgment against Hope Cartage, Inc., for the audit period January 1, 1992 through December 31, 2002 in the amounts of $ 184,169.82 for unpaid contributions on John Sinese, interest on those contributions and the higher of interest or liquidated damages pursuant, to 1132(g)(2)(A) - (C). Plaintiffs are also entitled to summary judgment on Plaintiffs' claims for contributions based upon owner-drivers hired by Hope during the same period in the amount of $ 22,619.00 for unpaid contributions pursuant to principles of contract law. Plaintiffs' Motion to Strike Portions of Hope Cartage, Inc.'s Motion for Summary Judgment is denied as moot.

ENTER:

James B. Zagel

United States District Judge

DATE: November 15, 2005

[*30] **JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is entered in favor of plaintiffs and against defendant, Hope Cartage, Inc. in the amount of $ 206,788.82, plus interest. Defendant's motion for summary judgment is denied.

Date: 11/15/2005